# UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF KENTUCKY
# FRANKFORT DIVISION

| | |
|---|---|
| BRIAN SPENCER, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>    v.<br><br>CHARTER FOODS, INC., and CHARTER CENTRAL, LLC; and DOES 1 to 25,<br><br>            Defendants. | Case No.<br><br>**NATIONWIDE**<br><br>**CLASS ACTION COMPLAINT** |

## NATIONWIDE CLASS ACTION COMPLAINT

COMES NOW, Plaintiff BRIAN SPENCER ("Plaintiff"), on behalf of himself and all others similarly situated, and asserts as follows:

## INTRODUCTION

1.       Plaintiff, a person with a mobility disability who use a wheelchair for mobility, brings this action individually and on behalf of all others similarly situated against Defendants, asserting violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and its implementing regulations. Defendants CHARTER FOODS, INC., and CHARTER CENTRAL, LLC, and DOES 1 through 25 (collectively, "Defendants") collectively own, lease, and/or operate at least two hundred and fifty-eight (258) Taco Bell restaurants in the states of Georgia, Kentucky, Massachusetts, Maine, Michigan, New Hampshire, New York, Ohio, Pennsylvania, Tennessee, Virginia, and West Virginia. Plaintiff's claims arise from own his experience with excessive sloping conditions in purportedly accessible parking spaces, access aisles, and curb ramps ("Parking Area" or "Parking Areas") at places of public accommodation

owned, operated, controlled, and/or leased by Defendants ("Defendants' facilities"), and from site investigations at six (6) of Defendants' facilities also finding excessive sloping conditions.

2.      Plaintiff asserts that these excessive sloping conditions persist partly due to Defendants' existing but inadequate internal maintenance procedure, which fails to ensure compliance with the sloping requirements of the ADA's implementing regulations. *See* 28 C.F.R. §§ 36.101 *et seq*.

3.      The ADA expressly authorizes the injunctive relief modifying Defendants' **existing** policies, practices, or procedures that Plaintiff seeks in this action. In relevant part, the ADA states:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities. … Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy…

42 U.S.C. § 12188(a)(2).

4.      Based on the extensive factual investigation performed by Plaintiff's investigators, Plaintiff believes and therefore asserts that numerous additional facilities owned, controlled, and/or operated by Defendants have Parking Areas that are or have become inaccessible to individuals who rely on wheelchairs for mobility due to excessive sloping, demonstrating that the Defendants' existing internal maintenance procedure (discussed at ¶¶ 19-22 below) is inadequate and must be modified.   42 U.S.C. § 12188(a)(2).

5.      Plaintiff brings this action individually and on behalf of all other similarly situated wheelchair users to compel Defendants to (i) remediate all access barriers within in the Parking Areas of their facilities, and (ii) modify its existing policies to ensure that its facilities comply with the ADA implementing regulations' excessive sloping requirements. 28 C.F.R. §§ 36.101 *et seq*.

6.      Consistent with 42 U.S.C. § 12188(a)(2), Plaintiff seeks prospective injunctive relief requiring that:

a. Defendants remediate excessive sloping within the Parking Areas at Defendants' facilities, consistent with the ADA's implementing regulations;

b. Defendants modify its existing maintenance policy to ensure that the excessive sloping conditions within the Parking Areas at Defendants' facilities do not reoccur; and

c. Plaintiff's representatives shall monitor Defendants' facilities to ensure that the injunctive relief ordered according to Paragraph 6.a. and 6.b. has been implemented and will remain in place.

7.     Plaintiff asserts the claims for prospective injunctive relief as class claims under Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was explicitly intended to be utilized in civil rights cases where the Plaintiff seeks prospective injunctive relief for his benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

Subdivision(b)(2).  This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . .. Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## PARTIES

8.     Plaintiff Brian Spencer is, and at all times relevant hereto was, a resident of Frankfort, Kentucky. Plaintiff is a person with a mobility disability. In April 2019, Mr. Spencer had a stroke that affected the left side of his body. As a result, he has minimal left arm and leg movement and uses a wheelchair for mobility.

9.     Plaintiff is, therefore, a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

10.     Defendant CHARTER FOODS, INC. is, and at all relevant times was, a Tennessee corporation, doing business in the States of Georgia, Kentucky, Tennessee, Virginia, and West Virginia as the owner, lessee, and/or operator of dozens of Taco Bell restaurants in these states.

11.     Defendant CHARTER CENTRAL, LLC is, and at all relevant times was a Tennessee corporation, doing business in the States of Kentucky, New York, Ohio, Pennsylvania, Virginia, and West Virginia as the owner, lessee, and/or operator of dozens of Taco Bell restaurants in these states.

12.     The true names and capacities, whether individual, corporate, associate or otherwise of the Defendants named herein as DOES 1 through 25, are unknown to Plaintiff at this time. Plaintiff will amend this Complaint to assert their true names and capacities when known. Plaintiff is informed and believe and thereon allege that each of the fictitiously-named Defendants is responsible in some manner for the occurrences alleged in this Complaint.

13.     Plaintiff asserts that Defendants, including DOE Defendants, and each of them at all times mentioned in this Complaint were the alter egos, affiliates, agents and/or employees and/or employers of their Co-Defendants, under shared management, ownership, and common control of each other, and part of a single Franchise Group, and in doing the things alleged in this Complaint were acting within the course of such agency, affiliation, shared management, ownership, control, and/or employment and with the permission and consent of their Co-Defendants.

14.     Plaintiff is further informed and believes, and based thereon alleges that Defendants collectively own, lease, and/or operate two hundred and fifty-eight (258) Taco Bell restaurants in the states of Georgia, Kentucky, Massachusetts, Maine, Michigan, New Hampshire, New York, Ohio, Pennsylvania, Tennessee, Virginia, and West Virginia, as described herein.

15.     Defendants' facilities are places of public accommodation as defined in 42 U.S.C. §12181(7) and are therefore subject to the requirements of the ADA.

**FACTUAL ASSERTIONS**

**Plaintiff Has Been Denied Full and Equal Access to Defendants' Facilities**

16.     Plaintiff visited Defendants' facilities at 1935 Plaudit Place, Lexington, Kentucky, 40507, on September 15, 2021. During that visit, he experienced unnecessary difficulty and risk of physical harm when exiting and entering his vehicle and navigating the facilities, such that extra care was needed to avoid falling and to safely traverse the area due to excessive slopes in the purportedly accessible Parking Areas as outlined in more detail below.

17.     Despite this difficulty and risk, Plaintiff plans to return to Defendants' facilities. Plaintiff often travels to the area for a variety of reasons. On September 15, 2021, Mr. Spencer traveled to the area with his wife to watch his youngest son play football. Mr. Spencer often travels to his son's football matches and usually stops for Taco Bell on these trips due to his preference for their beef crunchy taco supreme and an iced tea. Mr. Spencer further frequents this location when traveling to different family members' houses in Lexington. Plaintiff will be visiting the area multiple times a month to watch his son play football and visit his family. During those excursions, Mr. Spencer intends to dine at Defendants' Plaudit Place facility. Furthermore, Plaintiff intends to return to Defendants' facility to ascertain whether it remains in violation of the ADA.

18.     Defendants' non-compliance with the ADA significantly impeded Plaintiff's ability to access and safely use Defendants' facilities. Plaintiff will be deterred from returning to and fully and safely accessing Defendants' facilities due to the discrimination he has previously encountered there.

**Defendants Repeatedly Deny Individuals with Disabilities Full and Equal Access to**

**Defendants' Facilities**

19.     As the owner and/or operator of its facilities, Plaintiff is informed and believes, and based thereon alleges that Defendants are Taco Bell franchisees under franchise agreements that require Defendants utilize an Operations Manual or "Answer System" (the "Manual"). The Manual sets forth the standards issued by the franchisor and is required to follow all of its instructions, requirements, standards, specifications, and procedures at each of their locations, including those setting further management, administration, and maintenance policies, practices, and procedures related to "Daily Outside Maintenance." Plaintiff is further informed and believes that under the franchise agreements, Defendants are required to maintain the Restaurant buildings, drive-thrus, parking lots, and landscaped areas at each location in conformance with the specifications outlined in the Manual.

20.     Plaintiff is further informed and believes that according to the franchise agreements, Defendants are required to maintain the Restaurant buildings, drive-thrus, parking lots, and landscaped areas at each location in conformance with the specifications outlined in the Manual.

21.     Plaintiff is informed and believes that, pursuant to the franchise agreement, Defendants are required to enter into lease agreements containing specific terms, setting forth, among other things, Defendants' obligations to comply with the requirements of the ADA and the regulations promulgated thereunder, and to maintain, repair, and/or replace the parking lot, curbs, driveways, and sidewalks on the leased property.

22.     Plaintiff is further informed and believes, and based thereon alleges that, under the franchise agreement, that Defendants are required to designate a "Principal Operator" that

6

supervises the operation of Defendants' restaurants within designated market areas. Due to the high number of locations and geographic distances, Defendants manage compliance with their centralized policies, practices, or procedures concerning its daily outside maintenance obligations and obligations to maintain, repair, and/or replace features within its Parking Areas through one or more Directors of Operations, who supervises above restaurant leaders, including Regional Operations Managers, who provide support for Area Coaches; the Area Coaches, in turn, provide leadership and direct supervision to General Managers, and Assistant General Managers, who are in-restaurant supervisors. Plaintiff is further informed and believes, and based thereon asserts that Defendants employ a Director of Facilities who oversees one or more Regional Facility Managers who oversee the day-to-day maintenance and act as a liaison between operations and service providers for Defendants' restaurants, and who are responsible for developing, scheduling, and updating preventative maintenance programs for Defendants' restaurants. Plaintiff is informed and believes that collectively, these positions constitute the "Principal Operator" charged with overseeing operations of Defendants' restaurants for compliance with Taco Bell's policies through regular and complete inspections of Defendants' restaurants.

23.     Defendants' centralized maintenance and operational policies, practices, or procedures have systematically and routinely resulted in excessive sloping conditions in the Parking Areas of Defendants' facilities, violating the ADA and its implementing regulations.

24.     On Plaintiff's behalf, investigators examined multiple locations that Plaintiff is informed and believes are owned, controlled, and/or operated by Defendants and found the following violations, which are illustrative of the fact the Defendants' existing policies, practices, or procedures, are discriminatory, unreasonable, inadequate, and routinely result in excessive sloping conditions in the parking spaces, accessible routes, and curb ramps:

a.   207 Marshall Street, Benwood, West Virginia, 26031

   i.   The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had slopes exceeding 2.1%[1].

b.   2343 Noblestown Road, Pittsburgh, Pennsylvania, 15205

   i.   The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had slopes exceeding 2.1%;

   ii.   The purportedly accessible curb ramp projected into an access aisle[2].

c.   2909 West 12th Street, Erie, Pennsylvania, 16505

   i.   The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had slopes exceeding 2.1%.

d.   118 East 12th Street, Erie, Pennsylvania, 16501

   i.   The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had slopes exceeding 2.1%.

e.   4305 Peach Street, Erie, Pennsylvania, 16509

   i.   The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had slopes exceeding 2.1%.

f.   1935 Plaudit Place, Lexington, Kentucky, 40507

   i.   The purportedly accessible curb ramp located on the route to the building entrance had a running slope exceeding 8.33%[3].

25.   As evidenced by the widespread excessive sloping conditions present in the Parking Areas of Defendants' facilities, absent a change in Defendants' existing procedure, excessive

---

[1] Pursuant to the ADAAG 2010 Standards, parking spaces or access aisles may not have slopes steeper than 1:48, i.e., 2.1%. *See,* 36 C.F.R. part 1191, § 502.4. The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.6.3.

[2] According to the 2010 Standards, curb ramps cannot project into parking spaces or access aisles. *See,* 36 C.F.R. part 1191, § 406.5. The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.7.6, §4.7.8.

[3] The 2010 Standards at §§ 405.2 and 406.1 set the maximum threshold for ramp running slopes at not steeper than 1:12, i.e., 8.3%, and limit curb ramp flares to not steeper than 1:10 i.e., 10%. The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.7.5, §4.8.2.

sloping conditions will continue to reoccur in Defendants' facilities even after they have been remediated.

## JURISDICTION AND VENUE

26.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

27.     Plaintiff's claims asserted herein arose in this judicial district, and Defendants do substantial business in this judicial district.

28.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## CLASS ASSERTIONS

29.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of himself and the following nationwide class:

> All wheelchair users with qualified mobility disabilities who were denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any CHARTER FOODS, INC., and CHARTER CENTRAL, LLC, and DOES 1 through 25, location in the United States on the basis of disability because such persons encountered accessibility barriers due to Defendants' failure to comply with the ADA's slope regulations within the purportedly accessible Parking Areas of its facilities.

30.     <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court and facilitate judicial economy.

31.     <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

32.     <u>Common Questions of Fact and Law</u>:   There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to and use and enjoyment of, Defendants' facilities and/or services due to Defendants' failure to make their facilities fully accessible and independently usable as above described.

33.     <u>Adequacy of Representation</u>:   Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class members. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class, and he has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

34.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## SUBSTANTIVE VIOLATION

## VIOLATION OF THE ADA, TITLE III

### [42 U.S.C. §§ 12101, *et seq.*]

### (Against all Defendants)

35.     Plaintiff restates each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

36.     At all times relevant to this action, Plaintiff has been substantially limited in the major life activities of mobility. Accordingly, he is an individual with a disability defined by the ADA, 42 U.S.C. § 12102(2).

37.     Defendants own, lease, and/or operate restaurants that are places of public accommodation as defined under Title III of the ADA. 42 U.S.C. § 12181(7)(F).

38.     Plaintiff is informed and believes, and based thereon asserts that Defendants' facilities were altered, designed, or constructed after the effective date of the ADA.

39.     The ADA and the franchise agreements require the accessible features of Defendants' facilities, which include Parking Areas of its facilities, to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities.

40.     The architectural barriers described above demonstrate that Defendants' facilities were not constructed or altered in a manner that caused them to be readily accessible to and usable by individuals who use wheelchairs in the first instance, and/or that were not maintained or operated to ensure that they remained accessible to and usable by individuals who use wheelchairs.

41.     Furthermore, the architectural barriers described above demonstrate that Defendants have failed to remove barriers as required by 42 U.S.C. § 12182(b)(2)(A)(iv).

42.     Defendants' repeated and systemic failures to remove architectural barriers, to maintain the accessible features of their facilities, and/or modify its existing procedures to ensure compliance with the sloping requirements of the ADA's implementing regulations once constructed constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

43.     Defendants' conduct is ongoing and continuous, and Defendants' conduct has harmed Plaintiff.

44.     Unless Defendants are restrained from continuing its ongoing and continuous course of conduct, Defendants will continue to violate the ADA and inflict injury upon Plaintiff and the class.

45.     Given that Defendants have not complied with the ADA's requirements to make Defendants' facilities fully accessible to, and independently usable by, individuals who use wheelchairs, Plaintiff invokes his statutory rights to declaratory and prospective injunctive relief, as well as costs and attorneys' fees.

**PRAYER FOR DECLARATORY JUDGMENT AND
PROSPECTIVE INJUNCTIVE RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, prays for:

a.     A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants' facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b.     A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that (i) directs Defendants to take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (ii)  directs Defendants to modify its existing procedures to prevent the reoccurrence of excessive sloping conditions in the Parking Areas of its facilities post-remediation; and (iii) directs that Plaintiff shall monitor Defendants' facilities to ensure that the injunctive relief ordered above remains in place.

c.     An Order certifying the class proposed by Plaintiff, naming Plaintiff as class representative, and appointing his counsel as class counsel;

d.     Payment of costs of suit;

e.     Payment of reasonable attorneys' fees pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505; and

f.     The provision of whatever other relief the Court deems just, equitable, and appropriate.

///

Dated:  April 12, 2022.

Respectfully Submitted,

*/s/ Justin S. Peterson*
Justin S. Peterson
**GOLDEN LAW OFFICE, PLLC**
771 Corporate Drive, Suite 800
Lexington, KY 40503
Phone: 859-469-5000
jpeterson@goldenlawoffice.com

*Attorneys for Plaintiff and the Class*